FREEMAN MURRAY, AS ADMINISTRATOR, ETC., RESPONDENT, *v.* LUKE USHER AND OTHERS, APPELLANTS.

*Action by the personal representatives of a person alleged to have been killed by the defendant's negligence — evidence as to the amount expended by them in caring for the deceased, is not admissible in mitigation of damages.*

Upon the trial of this action, brought by the plaintiff to recover damages for the death of his intestate, which was alleged to have been caused by the defendants' negligence, the court refused to allow the defendants to ask a witness, "Was he (the plaintiff's intestate) taken care of, in the meantime (between the injury and death), by these defendants," or to receive evidence offered by them to show that two of the defendants expended $2,000 in the care of, support and attendance upon the intestate during his lifetime after the injury, and in giving him proper interment.

*Held,* that the evidence was properly excluded as incompetent.

*Littlewood* v. *Mayor, etc.* (89 N. Y., 24), distinguished.

APPEAL from a judgment entered in St. Lawrence county on the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

The action was brought to recover damages from the defendants for negligently causing the death of the plaintiff's intestate. John Blanchard, the deceased, was employed as a day laborer at the saw mill of the Racket River Lumber Company, a partnership com-

posed of the defendants Usher and Watkins. The defendant Lewis was the superintendent of the Racket River Lumber Company, and, at the time of the injury to Blanchard, was charged with the duty of looking after the platform, the fall of which caused the injury. On the 15th day of May, 1883, Blanchard, the decedent, was engaged with the witness Davis in hauling lumber into a box factory connected with the defendants' mill. The lumber was hauled upon a truck drawn by a single horse over a tramway, the car and load weighing some two tons and upwards. Just as the horse had entered the box factory, a platform in front of the door gave way under the load, and the horse was drawn backward and fell with the car and Blanchard twelve or fifteen feet into the river below. Blanchard received injuries from which he died May 22, 1884.

*John A. Vance,* for the appellants.

*N. L. Robinson,* for the respondent.

LEARNED, P. J.:

This is an action to recover damages for the death of plaintiff's intestate alleged to have been caused by defendant's negligence. The defendants on the trial asked the question : "Was he (plaintiff's intestate) taken care of in the meantime (between the injury and his death) by these defendants?" This was objected to both as not pleaded and as incompetent. The court said that the former objection could be obviated by an amendment, and he sustained the objection on other grounds. We must, therefore, in fairness, consider the evidence offered upon its merits. The defendants insist that it was admissible to mitigate the damages, as they had followed up this question by offering to show that defendants had paid $2,000 in the care of the intestate during the time above mentioned and in giving him proper interment.

The defendants rely on the case of *Littlewood* v. *Mayor, etc.* (89 N. Y., 24). Whatever may have been said in the opinion in that case, the only thing decided was that where the person injured brought suit and recovered in his lifetime, his personal representatives could not maintain an action under the statute. And the argument of the court is that, since the injured party had recovered his

damages, the defendant would not *thereafter* " have been liable if death had ensued." Nor would the neglect have *thereafter* " entitled the party injured to maintain an action " if death had not ensued. The argument and the decision seem to rest upon the fact that *at the time of death* the injured party had no right of action and the defendant was under no liability. Now it may be argued that, by analogy, any compensation made by the defendant during the lifetime of the injured party should be considered in mitigation on the trial of the action by the personal representatives. And this view is favored by a remark at the foot of page 32. It will be seen, however, that even that remark is limited to a *settlement* of the damages without suit.

One consideration which seems sufficient to show that this evidence was properly excluded is this : The injured party during his lifetime could recover for bodily suffering. His personal representatives after his death cannot. If, therefore, in this action, the defendants could show, in mitigation, the payment of money, it would be but just that the personal representatives should be permitted to show the bodily suffering of the deceased. Because the money might have been paid in consideration of these sufferings. This would, result, then, in bringing into an action of this kind an element of damages entirely improper. Notwithstanding, therefore, the alleged analogy between the giving of the evidence, which was excluded, and the proving a settlement or action by the deceased in bar; we are of the opinion that the case above cited does not apply and that no error was committed in this respect.

This action was brought by an employee against two employers and Lewis a co-employee. The defendants urge that Lewis was liable only for his own personal negligence. He was the superintendent and was charged with the duty of looking after the platform which fell, and by the fall of which the plaintiff's intestate, Blanchard, was injured. If he neglected his duty and thereby injury came to Blanchard, we suppose he was liable. In the charge of the court defendants were spoken of generally as bound to furnish Blanchard a safe and proper place in which to work, etc. No request was made by the counsel of Lewis to qualify this charge in respect to him. Possibly if such request had been made it would have been the duty of the court to make some qualification. For it

would hardly be said that Lewis, the superintendent, was bound to furnish a safe place to work. But no exception was taken and no request made to distinguish the special duty of Lewis from the general duty of the employers. And though a motion for nonsuit was made in behalf of each, yet even then no special position was taken in regard to Lewis and no distinction pointed out as to the nature of his liability.

Both at the close of the plaintiff's case and at the end of the evidence defendants moved for a nonsuit. They now urge that there was no evidence to justify the submission of the case to the jury. There is no proof, as they claim, that any of the defendants had any knowledge of any defect in the structure. On this point the appellants say that within two hours before the fall, the structure had sustained a weight double that under which it went down. But this is not conclusive. A structure always stands till it falls. Whenever a railroad train breaks through a bridge some other train had passed over safely not long before. According to the old proverb, it is the last straw that breaks the camel's back. A bridge or other structure which is gradually decaying finally reaches a condition when it falls. Of course if the fall is occasioned by some sudden cause, and not by gradual decay, the liability of the defendants would be very different. And the court properly charged that if the structure became unsafe at a time so near the accident, that the defendants had not reasonable time and opportunity to discover the defect, they are not liable.

The court further charged that if the becoming unsafe within one hour was the direct effect of age or of any other defect in the structure which could have been ascertained by competent examination, defendants are liable. The defendant's claim that this was erroneous because the extraordinary high water was ignored. But taking this part of the charge in connection with the rest, there is no doubt that the court plainly stated the law and that the jury could not have found the defendants liable except for a neglect to use reasonable care in keeping the structure safe.

There was evidence respecting the length of time that the structure had been erected and the length of time that hemlock posts such as those which supported the platform will last. Now, those posts stood where the water was sometimes six feet deep and where it was

sometimes dry, and there was an accumulation of rubbish around the bottom of the posts. There was evidence tending to show that the platform for a year or two before the accident had settled, and that it had been necessary to block it up; and also that it shook when loads and teams went over it. It cannot be necessary to go over the evidence in detail. It seems to us that there was evidence from which the jury might have inferred not only that the structure had been growing dangerous for some time before the accident, but also that this dangerous condition could have been seen by any observer; and that the defendants failed to make such examination of the condition of the structure as their duty required. And this is especially true when the nature and uses of the structure are considered and the liability of the posts which supported it to decay at the bottom.

The judgment and order should be affirmed, with costs.

WILLIAMS, J., concurred.

Judgment affirmed, with costs.